06-0409-cv
Cohen v. JP Morgan Chase & Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: September 27, 2006          Decided: August 6, 2007)

Docket No. 06-0409-cv

_____

SYLVIA C. COHEN, on behalf of herself
and all other persons similarly situated

*Plaintiff-Appellant*,

—v.—

JP MORGAN CHASE & CO. and JP MORGAN CHASE BANK,

*Defendants-Appellees.*

_____

Before:

WALKER, KATZMANN, and RAGGI, *Circuit Judges.*

_____

Appeal from a judgment of the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*), dismissing complaint that an undivided unearned fee charged in connection with the refinancing of a home mortgage violated Section 8(b) of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2607(b), and New York General Business Law § 349.  VACATED and REMANDED.

-1-

CATHERINE E. ANDERSON, Giskan & Solotaroff, New York, New York, *for Plaintiff-Appellant*.

GARY C. TEPPER, Arent Fox PLLC, Washington, D.C., *for Defendants-Appellees*.

CHRISTINE N. KOHL, Civil Division, United States Department of Justice, Washington, D.C., *for Amicus Curiae the United States Department of Housing and Urban Development in support of Plaintiff-Appellant*.

REENA RAGGI, *Circuit Judge*:

Plaintiff Sylvia C. Cohen sued defendants JP Morgan Chase & Co. and JP Morgan Chase Bank (hereinafter referred to collectively as "Chase") in the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*), alleging that Chase's collection of an unearned "post-closing fee" in connection with its refinancing of her home mortgage violated Section 8(b) of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(b), and New York General Business Law § 349. In a judgment entered on March 16, 2005, Cohen v. J.P. Morgan Chase & Co., No. CV-04-4098(CPS) (E.D.N.Y. Mar. 16, 2005), the district court dismissed Cohen's complaint on the ground that it failed to state a claim under RESPA § 8(b) because (1) the fee at issue was analogous to an "overcharge," which Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d 49, 55-57 (2d Cir. 2004), held was not prohibited by § 8(b); and (2) plaintiff had, in any event, failed to plead that the challenged fee represented part of a charge split between Chase

and one or more third parties. The district court similarly concluded that Cohen failed to state a deceptive practices claim under state law because the pleaded facts demonstrated that the challenged fee was disclosed.

For the reasons stated herein, we conclude that Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d at 55-57, does not control this case. We further conclude that RESPA § 8(b) is ambiguous as to whether its protections can apply to undivided, as well as divided, unearned fees. Because the Department of Housing and Urban Development ("HUD"), the agency charged with administering RESPA, reasonably resolves this ambiguity by construing the statute to apply to undivided fees, we accord that construction deference pursuant to Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), and we vacate the dismissal of Cohen's federal claim. We similarly vacate the dismissal of Cohen's state claim because, if she can show that the challenged fee violated RESPA, that fact might allow her to establish a deceptive business practice under New York law. Accordingly, we remand this case to the district court for reinstatement of the complaint and further proceedings consistent with this opinion.

## I. Factual Background

In September 2003, when Sylvia Cohen refinanced her home mortgage, Chase presented her with a closing statement listing various fees incurred in connection with that transaction. Among these was a $225 "post-closing fee," which Cohen paid. Cohen alleges that Chase provided no services for this fee. Although Chase disputes this contention, on

review of a judgment of dismissal, we must assume its truth. See, e.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

On September 22, 2004, Cohen instituted this action, suing on behalf of herself and a putative class of persons who had also refinanced home mortgages with Chase and paid similar unearned fees. See Fed. R. Civ. P. 23.[1] Following the district court's grant of Chase's motion to dismiss and its denial of Cohen's motion for reconsideration, see Cohen v. J.P. Morgan Chase & Co., No. CV-04-4098(CPS), 2006 WL 20596 (E.D.N.Y. Jan. 4, 2006), Cohen filed this appeal.

## II.     Discussion

### A.      Cohen's RESPA Claim

#### 1.      RESPA § 8(b) and the Standard of Review

Cohen's federal claim against Chase is premised on RESPA § 8(b), which states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). In a formal policy statement, HUD has construed this statutory section to proscribe unearned fees in three contexts:

> [where] (1) [t]wo or more persons split a fee for settlement services, any portion of which is unearned; or (2) one settlement service provider marks-up the cost of services performed or goods provided by another settlement service

---

[1]Because the district court dismissed Cohen's complaint for failure to state a claim, it had no occasion to consider the propriety of her proceeding on behalf of a class.

provider without providing additional actual, necessary, and distinct services, goods, or facilities to justify the additional charge; or (3) <u>one service provider charges the consumer a fee where no, nominal, or duplicative work is done</u>, or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,059 (Oct. 18, 2001) (codified at 24 C.F.R. § 3500.14(c)) ("Policy Statement") (emphasis added). The third numbered provision in fact references two circumstances. Cohen relies on the first, highlighted circumstance in pursuing her claim that "one service provider," such as Chase, cannot charge a consumer a fee for which "no . . . work is done," what we refer to hereinafter as an "undivided unearned fee."[2] The second, unhighlighted circumstance prohibits charges over and above "reasonable value." We invalidated this part of the third provision in <u>Kruse v. Wells Fargo Home Mortgage, Inc.</u>, 383 F.3d at 57, discussed <u>infra</u> at **[6-8]**.

We review the district court's decision to dismiss Cohen's § 8(b) claim <u>de novo</u>, both because it is a ruling of law pursuant to Federal Rule of Civil Procedure 12(b)(6), <u>see</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d at 191, and because it depends on statutory construction, <u>see</u> <u>Kruse v. Wells Fargo Home Mortgage, Inc.</u>, 383 F.3d at 54. Further, "the question of the appropriate level of deference to accord agency regulations is one purely of law, subject to <u>de novo</u> review." <u>Coke v. Long Island Care at Home, Ltd.</u>, 376 F.3d 118, 122 (2d Cir. 2004), <u>vacated on other grounds</u>, 546 U.S. 1147 (2006).

---

[2]The Policy Statement's first numbered provision proscribes unearned fees that make up any portion of a fee split between two or more persons, what we refer to hereinafter as a "divided unearned fee."

2.    *Kruse* Does Not Control This Case

Because the district court ruled that Cohen's claim was precluded as a matter of law by our construction of RESPA § 8(b) in Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d at 57, we consider at the outset whether that decision does, in fact, control this case. We conclude that it does not.

In Kruse, we considered two parts of the quoted Policy Statement: numbered provision 2, referencing mark-ups; and the second part of numbered provision 3, referencing fees in excess of reasonable value. The Kruse plaintiffs alleged that Wells Fargo had violated § 8(b) by marking up the price of services provided by a third party. We concluded that RESPA § 8(b) was "not clear and unambiguous with respect to its coverage of mark-ups." Id. at 58.[3] Because the second prong of HUD's Policy Statement reasonably resolved that ambiguity to prohibit mark-ups, we accorded Chevron deference to that agency interpretation. See id. at 58, 61. The Kruse plaintiffs further alleged that defendants violated § 8(b) by charging fees in excess of the reasonable value of services that they did provide. We held that this agency interpretation, which effectively imposed price controls on

---

[3]In so ruling, we rejected the views of three sister circuits that § 8(b)'s phrase, "[n]o person shall give and no person shall accept" requires both a culpable giver and acceptor of the challenged fee for there to be a violation of law. See Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d at 57-58 (rejecting views of Fourth, Seventh, and Eighth Circuits in Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265 (4th Cir. 2002), Krzalic v. Republic Title Co., 314 F.3d 875, 879 (7th Cir. 2002), and Haug v. Bank of America, N.A., 317 F.3d 832, 838 (8th Cir. 2003), in favor of those expressed by Eleventh Circuit in Sosa v. Chase Manhattan Mortgage Corp., 348 F.3d 979, 983 (11th Cir. 2003)).

settlement fees, was contrary to the plain meaning of the statute. See id. at 56. We explained that RESPA § 8(b) does not authorize courts to break down a single charge into "reasonable" and "unreasonable" components. Id. ("Whatever its size, such a fee is 'for' the services rendered by the institution and received by the borrower."). Thus, we invalidated that part of the Policy Statement's third prong prohibiting fees exceeding the "reasonable value" of the services rendered. Id.

On this appeal, Cohen relies on neither of the Policy Statement provisions at issue in Kruse to support her § 8(b) claim. Instead, she invokes only that part of the third numbered provision wherein HUD interprets § 8(b) to prohibit undivided unearned fees charged by a single service provider. Each party to this action nevertheless contends that Kruse compels resolution of this appeal in its favor. Cohen (with the support of HUD) argues that the twin rulings in Kruse effectively establish that, while § 8(b) does not authorize price controls for services actually performed, it does proscribe fees for no services, whether structured as a divided or undivided charge. Chase counters that Kruse approved the application of § 8(b) to mark-ups only because a mark-up, by allowing one person to piggy-back an unearned fee onto the charge of a third-party service provider, effectively constitutes a divided charge. For its part, the district court concluded that Cohen's claim failed because the challenged fee was sufficiently analogous to the overcharges that Kruse held were beyond the reach of the statute.

In fact, Kruse had no occasion to consider and, therefore, did not address the critical

issue on this appeal: whether RESPA § 8(b)'s reference to "any portion, split, or percentage of any charge" clearly and unambiguously indicates Congress's intent to prohibit unearned fees only when incorporated in charges divided among two or more persons, thereby precluding HUD's construction of the statute to prohibit "one service provider" from "charg[ing] the consumer a fee where no, nominal, or duplicative work is done," Policy Statement, 66 Fed. Reg. at 52,052. In this quoted language, HUD's focus is not on lenders who overcharge for services actually provided; it is on lenders who charge fees for no services at all. Accordingly, Kruse's holding that RESPA § 8(b) is clearly not a price control statute does not resolve this appeal. Similarly, the quoted Policy Statement language here is distinct from the provision concerned with mark-ups. Thus, Kruse's holding that RESPA § 8(b) is ambiguous with regard to mark-ups, and that the second prong of the Policy Statement reasonably resolves this ambiguity by establishing their illegality, tells us nothing about whether § 8(b) also prohibits undivided unearned fees. To resolve that issue, we must again interpret § 8(b) according to the two-step process outlined in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. at 842-43, this time focusing on RESPA's reference to "any portion, split, or percentage of any charge."

        3.    *Chevron* Analysis Supports HUD's Construction of RESPA § 8(b) to Prohibit Lenders from Accepting Undivided Unearned Fees

        a.    *Chevron* Analysis

At Chevron step one, we consider whether Congress has clearly spoken in RESPA § 8(b) to the issue of undivided unearned fees. "If the intent of Congress is clear, that is the

end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id.; accord Chauffeur's Training Sch., Inc. v. Spellings, 478 F.3d 117, 125 (2d Cir. 2007). To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. See Zuni Pub. Sch. Dist. v. Dep't of Educ., 127 S.Ct. 1534, 1543 (2007); Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 423 (2d Cir. 2005). If the statutory language is ambiguous, however, we will "resort first to canons of statutory construction, and, if the [statutory] meaning remains ambiguous, to legislative history," Daniel v. Am. Bd. of Emergency Med., 428 F.3d at 423 (internal citations omitted), to see if these "interpretive clues" permit us to identify Congress's clear intent, General Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 586 (2004). If we still cannot conclude that Congress has "directly addressed the precise question at issue," we will proceed to Chevron step two, which instructs us to defer to an agency's interpretation of the statute, so long as it is "reasonable." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843-44; accord Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d at 55.

    b.    The Statutory Phrase "Any Portion, Split, or Percentage of Any Charge" Is Ambiguous with Respect to Congress's Intent to Prohibit Undivided Unearned Fees

Accepting as true the allegations in Cohen's complaint, we assume that the challenged $225 post-closing fee could constitute a "charge" for which no "services [were] actually performed" under RESPA § 8(b), i.e., an unearned fee. 12 U.S.C. § 2607(b). Accordingly,

at the first step of Chevron analysis, we must decide whether § 8(b)'s reference to "any portion, split, or percentage of" an unearned charge demonstrates Congress's clear intent to prohibit unearned fees only when reflected in charges divided among two or more persons. Chase submits that such intent is apparent from the plain meaning of the words "portion," "split," and "percentage." To support Cohen's claim, HUD counters that § 8(b)'s reference to "any portion, split, or percentage of any charge" signals Congress's broader intent. Because the text is, in fact, subject to "divergent, but plausible, constructions," on the issue of undivided unearned fees, Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d at 58, we conclude that it is ambiguous in revealing Congress's intent on this subject.

To explain, we begin by considering the "ordinary meaning" of the nouns at the center of the contested phrase. Gonzales v. Carhart, 127 S.Ct. 1610, 1630 (2007); accord Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007). The word "portion" is commonly understood to mean "an individual's part or share of something" or "a part of a whole." Webster's Third New International Dictionary 1768 (2002). "Split" means "a product of division by or as if by splitting," or "a share (as of booty, winnings, profits)." Id. at 2202. "Percentage" is commonly understood to mean "a part of a whole expressed in hundredths." Id. at 1675. To the extent the words "share" and "part" recur in these definitions, we note that "share" is commonly defined as "a portion belonging . . . to an individual," id. at 2087, while "part" is defined as "one of the equal or unequal portions into which something is or is regarded as divided" or "something less than a whole," id. at 1645. Thus, because the words "portion,"

"split," and "percentage" are commonly understood to reference things that have been divided and that are less than a whole, their use together in RESPA § 8(b) could plausibly be understood to signal a legislative intent to prohibit unearned fees only when reflected in divided charges.

Our task at Chevron step one, however, is not simply to interpret individual words but to construe statutes. In so doing, we follow "the cardinal rule that statutory language must be read in context since a phrase gathers meaning from the words around it." General Dynamics Land Sys., Inc. v. Cline, 540 U.S. at 596 (internal quotation marks omitted). In RESPA § 8(b), Congress placed the words "portion, split, or percentage" within the phrase "any portion, split, or percentage of any charge." 12 U.S.C. § 2607(b) (emphasis added). As the Supreme Court has frequently observed, use of the word "any" in statutory text generally indicates Congress's intent to sweep broadly to reach all varieties of the item referenced. See, e.g., United States v. Gonzales, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976) in concluding that, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'"); accord HUD v. Rucker, 535 U.S. 125, 131 (2002) (same); Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (noting that "Congress made [the phrase at issue] even broader when it chose the expansive word 'any' to precede the list" (internal quotation marks omitted)). The Court most recently applied this principle in interpreting the phrase "'any air pollution agent or combination of such agents, including any physical, chemical . . .

-11-

substance or matter which is emitted into or otherwise enters the ambient air'" in the Clean Air Act. Massachusetts v. EPA, 127 S. Ct. 1438, 1460 (2007) (quoting 42 U.S.C. § 7602(g)) (ellipsis and emphases in original). It concluded that "[o]n its face," the quoted language "embraces all airborne compounds of whatever stripe, and underscores that intent through the repeated use of the word 'any.'" Id.

The Court has cautioned that, in some circumstances, the word "any" may warrant a narrower interpretation. See, e.g., Small v. United States, 544 U.S. 385, 388 (2005) ("[E]ven though the word 'any' demands a broad interpretation, we must look beyond that word itself." (internal quotation marks omitted)); Nixon v. Missouri Mun. League, 541 U.S. 125, 132 (2004) ("'[A]ny' can and does mean different things depending upon the setting."); Lewis v. United States, 523 U.S. 155, 160 (1998) (avoiding "literal reading of the words 'any enactment'" that "would dramatically separate the statute from its intended purpose"). This precedent only reinforces the rule that statutory terms are not interpreted in the abstract but in the context of surrounding language. Thus, we must consider whether the expansive modifier "any," when paired with the nouns "portion, split, or percentage," can plausibly be construed to include an undivided charge. We conclude that it can.

In reaching this conclusion, we note that, although Congress appears to have used the precise phrase "any portion, split, or percentage" only in RESPA § 8(b), it has used the formulations "any portion of" and "any percentage of" in other federal statutes.[4] For

---

[4]The parties do not point us to any use of the phrase "any split of" in the United States Code other than in RESPA § 8(b), and we have identified none ourselves.

example, 18 U.S.C. § 644 states: "Whoever, not being an authorized depository of public moneys, knowingly receives . . . any public money . . . or uses, transfers, converts, appropriates or applies any portion of the public money for any purpose not prescribed by law is guilty of embezzlement" (emphasis added). Similarly, 18 U.S.C. § 648 and § 653 proscribe as "embezzlement" the unauthorized use, conversion, transfer, or application of "any portion of the public money[s] intrusted to [certain persons]" (emphasis added). Title 19 U.S.C. § 1620 makes it unlawful for a federal official to accept or receive "any portion of the money which may accrue to any person making [a customs] detection and seizure" (emphasis added). In none of these statutes does Congress's use of the phrase "any portion of" manifest a clear intent not to criminalize the proscribed conduct when it involves the whole of the moneys at issue. Indeed, such a conclusion would appear to border on the absurd.[5] So too, the requirement that a financial institution not collect or attempt to collect from a student loan recipient "any portion of the interest on the note which is payable by the Secretary [of Education]," 20 U.S.C. § 1077(a)(2)(E) (emphasis added), hardly signals clear congressional intent to allow institutions to collect the whole of such interest.

As for the phrase "any percentage," in 42 U.S.C. § 1396a(l)(4)(B), authorizing medical assistance grants, Congress used it to allow certain states to "substitute for the percentage provided [earlier in the section] any percentage" (emphasis added). Because the

_____

[5]Of course, this case presents us with no occasion to rule on the meaning of any statute except RESPA § 8(b). We reference other statutes merely to illustrate why we cannot confidently conclude from the text of § 8(b) that Congress clearly intended to prohibit unearned fees only when they were divided among two or more persons.

-13-

percentages provided by the statute include 75% and 133%, see id. § 1396(l)(2)(A)(ii), it appears clear that, in this context at least, Congress plainly intended "any percentage" to reference amounts equal to and even greater than 100%. See also Wisconsin Dep't of Health & Family Servs. v. Blumer, 534 U.S. 473, 481 (2002) (referring to "percentage" in context of 42 U.S.C. § 1396r-5, including 150%); Garelick v. Sullivan, 987 F.2d 913, 915 (2d Cir. 1993) (discussing "percentages" of "charges" in context of 42 U.S.C. § 1395w-4(g)(2), including 115%).

Mindful that Congress has thus frequently used the phrases "any portion" and "any percentage" without conveying a clear intent to legislate only as to less than the whole, we cannot confidently conclude from their inclusion in RESPA § 8(b) that, in that context, they unambiguously convey a narrow congressional intent.[6] Nevertheless, we consider the

---

[6]Our conclusion is reinforced by the fact that Congress also routinely uses the phrase "any part of" in various federal statutes that do not clearly communicate an intent to reference only parts less than a whole. For example, the federal racketeering statute makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income . . . [in] interstate commerce." 18 U.S.C. § 1962(a) (emphasis added). A defendant who had invested all his racketeering-derived income in interstate commerce could not escape liability by arguing that Congress intended to reach only persons who invested less than the whole of their illicit profits. See generally Leonard B. Sand et al., Modern Federal Jury Instructions: Criminal, Instruction 52-8 cmt. (June 2000) (observing that statutory phrase "any part of the income" has been characterized as "expansive, not restrictive" and "deliberately broad" (internal quotation marks omitted)). The same conclusion obtains with respect to federal narcotics laws. See 21 U.S.C. § 854(a) (making it unlawful for any person who has derived income from violation of federal drug laws "to use or invest, directly or indirectly, any part of such income" in interstate commerce (emphasis added)). Similarly, Congress's prohibition of the use of force to induce any person employed on a federally funded construction project to "give up any part of the compensation to which he is entitled under his contract of employment," 18 U.S.C. § 874 (emphasis added), hardly signals a clear

-14-

possibility that the sum may be more than its parts and that the longer phrase here at issue —

"any portion, split, or percentage of any charge" — might convey Congress's clear intent to

exclude an undivided whole. Three of our sister circuits have, after all, embraced such a

narrow interpretation of RESPA § 8(b). See Haug v. Bank of Am., N.A., 317 F.3d 832, 840

(8th Cir. 2003) (holding that "plain language of Section 8(b) requires plaintiffs to plead facts

showing that the defendant illegally shared fees with a third party"); Krzalic v. Republic Title

Co., 314 F.3d 875, 879 (7th Cir. 2002) (reasoning that defendant "did not 'accept any

portion, split, or percentage of any charge'" because no one agreed "to divide" a fee);

Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265 (4th Cir. 2002) ("By using the

language 'portion, split, or percentage,' Congress was clearly aiming at a sharing

arrangement rather than a unilateral overcharge."). But see Sosa v. Chase Manhattan

Mortgage Corp., 348 F.3d 979, 983 (11th Cir. 2003) (holding that "a single party can violate

subsection 8(b)"). These circuits' holdings with respect to undivided unearned fees cannot,

however, be divorced from their construction of § 8(b)'s phrase "[n]o person shall give and

no person shall accept" to require at least two culpable parties in any proscribed transaction.

This court rejected that construction in our consideration of "mark-ups" in Kruse v. Wells

Fargo Home Mortgage Corp., 383 F.3d at 57-58. Thus, we do not assume that a guilty giver

and a guilty acceptor must participate in every unlawful unearned charge, a circumstance

more suggestive of a divided charge.

---

intent not to criminalize extortion of the whole of the victim's compensation.

Nor does the canon of construction noscitur a sociis permit us to identify a clear congressional intent to limit § 8(b) to divided charges. See 2A Norman J. Singer, Statutes and Statutory Construction § 47.16 (6th ed. 2002) (explaining that "when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the specific word"). As we have already recognized, the common meaning of all three nouns in the contested phrase references something that has been divided and is less than whole. See supra at **[10-11]**. Whether or not any one noun is more specific in this respect, the critical interpretive issue in this case is not whether distinctions can be drawn among these three nouns, but whether use of the expansive modifier "any" in conjunction with all three words gives rise to ambiguity regarding Congress's intent with respect to § 8(b)'s prohibition on undivided unearned fees.

We conclude that it does. Congress's serial reference to "any portion, split, or percentage of any charge" in § 8(b) can plausibly be construed to demonstrate a legislative intent to sweep broadly, prohibiting all unearned fees, however structured. See generally United States v. Dauray, 215 F.3d 257, 262 (2d Cir. 2000) (concluding that noscitur a sociis does not resolve textual ambiguity where language plausibly supports both narrow and expansive reading). While Congress could certainly have used clearer language to convey such intent, see, e.g., 11 U.S.C. § 1301(a) (barring creditors from collecting "all or any part of a consumer debt" of debtor protected by Chapter 13 bankruptcy (emphasis added)), it could also have used clearer language if its intent was to exclude undivided unearned fees

-16-

from the statute's reach. Faced with competing, plausible interpretations, we conclude that the statutory text is ambiguous in conveying Congress's intent. See Mizrahi v. Gonzales, No. 05-0010-ag, slip at 21-22 (2d Cir. June 27, 2007) (recognizing ambiguity arising from competing, plausible interpretations); Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d at 58 (observing that "divergent, but plausible, constructions" of language at issue preclude finding of "clear and unambiguous" congressional intent); see also United States v. Gayle, 342 F.3d 89, 92-93 (2d Cir. 2003) (concluding that phrase "any court" is ambiguous as to inclusion of foreign courts); Cheung v. United States, 213 F.3d 82, 90-91 (2d Cir. 2000) (observing that phrase "any foreign government" is ambiguous as to inclusion of Hong Kong where statutory terms "neither compel nor exclude" competing interpretations).

      c.      RESPA's Structure, Purpose, and History Do Not Clearly Resolve the Textual Ambiguity

When the text of a statute is ambiguous, we look to "structure, purpose, and history" to determine whether these construction devices can convincingly resolve the ambiguity at Chevron step one. General Dynamics Land Sys., Inc. v. Cline, 540 U.S. at 600. A high level of clarity is necessary to resolve textual ambiguity in this manner. At the first step of Chevron analysis, a court's task is not to infer what Congress might have said about the issue in dispute if it had considered the matter; a court decides only "whether Congress has directly spoken to [that] precise question." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 842. Thus, we employ traditional tools of construction to determine only if they compel a particular conclusion as to Congress's intent. See Pension Benefit Guar. Corp. v.

LTV Corp., 496 U.S. 633, 649 (1990); see also General Dynamics Land Sys., Inc. v. Cline, 540 U.S. at 586, 590 (observing that "interpretive clues" spoke "almost unanimously," establishing Congress's intent "beyond reasonable doubt"); FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 143, 158 (2000) (concluding that Congress's preclusion of agency position was "inescapable" and "unmistakable"); cf. Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 240 (1986) (observing that "scattered statements" in legislative history "hinting at" congressional intent are insufficient to resolve ambiguity). In this case, they do not.

### (1)    Structure

RESPA is structured so that Section 8, entitled "Prohibition against kickbacks and unearned fees," is divided into three subparts. Section 8(a), entitled "Business referrals,"[7] prohibits payments for referrals within the real estate settlement business. 12 U.S.C. § 2607(a). Section 8(b), entitled "Splitting charges," is the part at issue in this case. Id. § 2607(b). As already noted, it prohibits any person from giving or accepting not only any split charge for which no services were performed, but also any portion or percentage of an unearned charge. Section 8(c), entitled "Fees, salaries, compensation, or other payments," specifies that certain bona fide service fees and disclosed referral fees are not prohibited by

---

[7]As enacted by Congress, RESPA contained no subsection titles. See RESPA, Pub. L. No. 93-533, § 8(b), 88 Stat. 1724, 1727 (1974). Accordingly, we note titles only for ease of reference, without giving them interpretive weight. See United States Nat'l Bank of Or. v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 448 & n.3 (1993) (stating that Statutes At Large constitute "legal evidence of laws" unless Congress has expressly enacted U.S. Code title as positive law).

-18-

RESPA. Id. § 2607(c).

Chase argues that, together, these subsections support an interpretation of § 8(b) that protects consumers from unearned fees only when included in charges divided among two or more persons. Because the referral fees referenced in subsection (a) and the safe harbor created by subsection (c) appear to reference fees involving two or more parties, Chase urges us to conclude that Congress necessarily intended subsection (b) to prohibit unearned fees only when charges were divided among multiple persons. However plausible this reading of the statutory structure, it is no more compelling than Chase's similar reading of the text. It is equally plausible that Congress could have intended RESPA § 8(b) to prohibit behavior separate and distinct from subsection (a). Moreover, its decision not to provide a safe harbor for unearned fees in subsection (c) makes equal sense whether such fees are divided or not.

Because the structure of the statute does not speak unambiguously to Congress's intent with respect to undivided unearned fees, it cannot resolve textual ambiguity at Chevron step one. Cf. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. at 133-43 (rejecting agency interpretation at Chevron step one as "incompatible with" and "precluded" by "coherent regulatory scheme").

(2)     Purpose

In RESPA, Congress identified two concerns requiring "significant reforms in the real estate settlement process": (1) providing consumers with "greater and more timely information on the nature and costs" of that process, and (2) providing consumers with "protect[ion] from unnecessarily high settlement charges caused by certain abusive

-19-

practices." 12 U.S.C. § 2601(a). To address these concerns, Congress identified RESPA's purpose as four-fold: (1) "more effective advance disclosure to home buyers and sellers of settlement costs," (2) "the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services," (3) "a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance," and (4) "reform and modernization of local recordkeeping of land title information." Id. § 2601(b). Pointing to the absence of any reference to undivided unearned fees in this statement of purpose, the Fourth Circuit has concluded that RESPA § 8(b) is limited to divided fees. See Boulware v. Crossland Mortgage Corp., 291 F.3d at 268.

We are not convinced, however, that Congress's silence on the issue of undivided unearned fees demonstrates its direct consideration of the issue, much less its clear intent to exclude such charges from the protections § 8(b) affords consumers. First, as the Supreme Court has recognized, "statutory prohibitions often go beyond the principal evil [identified by Congress] to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998). Indeed, RESPA provisions, such as the prohibition on charges for the preparation of truth-in-lending statements, see 12 U.S.C. § 2610, go beyond the stated statutory goal to eliminate kickbacks and referral fees. Second, although RESPA's statement of purpose nowhere references undivided unearned fees, the prohibition of such fees is consistent with RESPA's overall goal to protect

-20-

consumers from "abusive practices" that result in "unnecessarily high settlement charges." 12 U.S.C. § 2601(a). In short, this is not a case where one reading of ambiguous text can be ruled out because it would harm the very class that Congress intended to protect. See General Dynamics Land Sys., Inc. v. Cline, 540 U.S. at 586 (reaching that conclusion with respect to agency's construction of Age Discrimination in Employment Act).

Because RESPA's stated purpose neither requires that § 8(b) be construed to prohibit undivided unearned fees nor precludes that interpretation, it does not render the statutory text unambiguous at Chevron step one.

### (3)    Legislative History

This court has generally been reluctant to employ legislative history at step one of Chevron analysis, see Coke v. Long Island Care at Home, Ltd., 376 F.3d at 127 & n.3, mindful that the "interpretive clues" to be found in such history will rarely speak with sufficient clarity to permit us to conclude "beyond reasonable doubt" that Congress has directly spoken to the precise question at issue, General Dynamics Land Sys., Inc. v. Cline, 540 U.S. at 590, 600. This case is no exception.

The legislative history of RESPA § 8(b) is set forth most authoritatively in Senate Report No. 93-866 (1974), as reprinted in 1974 U.S.C.C.A.N. 6546.[8] The Senate Report describes Section 8 (then numbered Section 7) as follows:

---

[8]The Senate bill was passed in lieu of the House bill, and the House Conference Report makes no mention of the provision that became § 8(b). See S. Rep. No. 93-866 (1974), as reprinted in 1974 U.S.C.C.A.N. 6546; H.R. Rep. No. 93-1526 (1974) (Conf. Rep.), as reprinted in 1974 U.S.C.C.A.N. 6569.

PROHIBITION AGAINST KICKBACKS AND UNEARNED FEES

Section 7 is intended to prohibit all kickback or referral fee arrangements whereby any payment is made or "thing of value" furnished for the referral of real estate settlement business. The section also prohibits a person or company that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed. Reasonable payments in return for services actually performed or goods actually furnished are not intended to be prohibited.

In a number of areas of the country, competitive forces in the conveyancing industry have led to the payment of referral fees, kickbacks, rebates, and unearned commissions as inducements to persons who are in a position to refer settlement business. Such payments take various forms. For example, a title insurance company may give 10% or more of the title insurance premium to an attorney who may perform no services for the title insurance company other than placing a telephone call to the company or filling out a simple application. A discount or allowance for the prompt payment of a title insurance premium or other charge for a settlement service may be given to realtors or lenders as a rebate for the placement of business with the individual or company giving the discount. An attorney may give a portion of his fee to another attorney, lender, or realtor who simply refers a prospective client to him. In some instances, a "commission" may be paid by a title insurance company to a corporation that is wholly-owned by one or more savings and loan associations, even though that corporation performs no substantial services on behalf of the title insurance company.

In all of these instances, the payment or thing of value furnished by the person to whom the settlement business is referred tends to increase the cost of settlement services without providing any benefits to the home buyer. While the making of such payments may heretofore have been necessary from a competitive standpoint in order to obtain or retain business, and in some areas may even be permitted by state law, it is the intention of section 7 to prohibit such payments, kickbacks, rebates, or unearned commissions.

Id. at 6551.

The examples identified in the Senate Report all appear to reference charges divided among multiple persons. Such examples, however, cannot by themselves compel a

conclusion that Congress directly considered and clearly rejected a prohibition of undivided unearned fees. See Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. at 649, rev'g 875 F.2d 1008 (2d Cir. 1989). When the Pension Benefit case was before this court, we noted passages in ERISA's legislative history indicating that Congress had considered a particular circumstance a valid basis for restoration of pension plans but had made no mention of another possible circumstance. We reasoned that, because the second circumstance was "not among the bases for restoration by Members of Congress, that body must have intended that the existence of [that second circumstance] not be a reason for restoring pension plans." Id. (emphasis in original) (summarizing analysis appearing at 875 F.2d at 1017). The Supreme Court reversed, ruling that the legislative history did not "compel" such a narrow interpretation of the statute. Id. The Court explained:

> [T]he language of a statute — particularly language expressly granting an agency broad authority — is not to be regarded as modified by examples set forth in the legislative history. An example, after all, is just that: an illustration of the statute's operation in practice. It is not, as the Court of Appeals apparently thought, a definitive interpretation of a statute's scope. We see no suggestion in the legislative history that Congress intended its list of examples to be exhaustive. Under these circumstances, we conclude that ERISA's legislative history does not suggest "clear congressional intent" on the question of follow-on [pension] plans.

Id.

In this case Congress has similarly granted RESPA's administering agency, HUD, broad authority "to prescribe such rules and regulations" and "to make such interpretations . . . as may be necessary to achieve the purposes" of the statute. 12 U.S.C. § 2617. In these circumstances, Pension Benefit does not permit us to conclude, merely from the absence of

an example of undivided charges in RESPA's legislative history, that Congress thereby expressed its clear intent that § 8(b) <u>not</u> protect consumers from any unearned fees except those reflected in divided charges. The legislative history may demonstrate that Congress's primary concern was divided charges, but that does not convincingly establish that Congress "intended its list of examples to be exhaustive" or "suggest 'clear congressional intent'" not to protect consumers from undivided unearned fees. <u>Pension Benefit Guar. Corp. v. LTV Corp.</u>, 496 U.S. at 649.

Because neither the structure, purpose, nor legislative history of RESPA § 8(b) clearly resolves the identified textual ambiguity with respect to undivided unearned fees, we proceed to the second step of <u>Chevron</u> analysis.

> d. <u>HUD Reasonably Construes RESPA § 8(b) to Prohibit Undivided Unearned Fees</u>

At <u>Chevron</u> step two, we will defer to a reasonable agency interpretation of ambiguous statutory language "when it appears that Congress has delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27 (2001). As previously noted, 12 U.S.C. § 2617 confers such authority on HUD. Moreover, in <u>Kruse v. Wells Fargo Home Mortgage, Inc.</u>, 383 F.3d at 58-61, this court ruled that HUD acted pursuant to this authority in promulgating its Policy

Statement respecting § 8(b).[9] We now hold that HUD's Policy Statement reasonably interprets § 8(b) comprehensively to prohibit unearned fees, whether reflected in a charge divided among multiple parties or an undivided charge from a single lender, as in this case. In determining that the statutory reference to "any portion, split, or percentage of any charge" gives rise to an ambiguity as to Congress's intent, we have already observed that the phrase can plausibly be construed to sweep broadly, prohibiting unearned fees regardless of whether or not they are divided. The structure, purpose, and history of RESPA do not clearly demonstrate that Congress considered and rejected such a construction. Thus, even if Congress's focus in propounding § 8(b) was on unearned fees that the lending industry was routinely incorporating into divided charges, the statute can reasonably be construed also to reach undivided unearned fees. Such an outcome is hardly unusual. "[S]tatutory prohibitions often go behind the principal evil" prompting congressional action "to cover reasonably comparable evils." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. at 79. From the perspective of those consumers whom Congress sought to protect through § 8(b), HUD's interpretation has the virtue of making that protection depend solely on the fact that a fee is unearned, not on whether the lender keeps 99.9% of the charge rather than 100%.

In a footnote to its main brief, Chase argues that HUD's interpretation is unreasonable because it is an unexplained change from the agency's previous position. See Motor Vehicle

---

[9]The Policy Statement was not promulgated by HUD pursuant to notice-and-comment rulemaking; nevertheless, Kruse concluded that it reflected sufficient agency consideration and application of expertise to merit Chevron deference. See Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d at 58-61.

Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983) ("An agency changing its course . . . is obligated to supply a reasoned analysis for the change beyond that which may be required . . . in the first instance."). We are not convinced. In the 1976 edition of its consumer information booklet, which HUD is required by law to distribute to borrowers and lenders, see 12 U.S.C. § 2604, the agency advised that it is "illegal to charge or accept a fee or part of a fee where no service has actually been performed," 41 Fed. Reg. 20,280, 20,289 (1976). The 1997 edition of the information booklet similarly states: "It is also illegal for anyone to accept a fee or part of a fee for services if that person has not actually performed settlement services for the fee." 62 Fed. Reg. 31,982, 31,998 (1997). Thus, even before adopting the 2001 Policy Statement relied on by Cohen in this case, the agency had consistently taken the position that § 8(b) prohibits unearned fees, in whole or in part.

At oral argument, Chase further challenged the reasonableness of HUD's interpretation by pointing to a possible anomalous result in that a lender could be liable under RESPA § 8(b) for charging an unearned $225 post-closing fee but, under Kruse, could not be liable if it charged a borrower $225 more for a service that was actually provided. See Krzalic v. Republic Title Co., 314 F.3d at 880 (discussing similar hypothetical). We have no occasion to consider the legality of the latter action on this appeal. But, even assuming that Chase is correct, the fact that § 8(b) does not safeguard against all means by which unscrupulous lenders could impose "unnecessarily high settlement charges" on consumers, 12 U.S.C. § 2601(a), does not render unreasonable HUD's interpretation with respect to undivided unearned fees. "'The Supreme Court repeatedly has instructed that neither the fact

-26-

that a classification may be overinclusive or underinclusive nor the fact that a generalization underlying a classification is subject to exceptions renders the classification irrational.'" Chen v. Ashcroft, 381 F.3d 221, 227 (3d Cir. 2004) (Alito, J.) (quoting Lofton v. Sec'y of the Dep't of Children & Family Servs., 358 F.3d 804, 822-23 (11th Cir. 2004)). So too, mere overinclusiveness or underinclusiveness is insufficient to render an agency interpretation unreasonable at Chevron step two. See id.

Because we determine that HUD reasonably construes RESPA § 8(b) to prohibit "one service provider" from charging the consumer a fee for which "no . . . work is done," Policy Statement, 66 Fed. Reg. at 53,057, we defer to that interpretation and conclude that Cohen adequately states a claim under RESPA § 8(b) by alleging that Chase collected an undivided unearned fee. Accordingly, we vacate the Rule 12(b)(6) dismissal of this part of her complaint.

B.    Cohen's State Law Claim

Cohen further appeals the dismissal of her deceptive practices claim under New York General Business Law § 349. We review that dismissal de novo. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 193-94 (2d Cir. 2005).

Section 349 states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. A § 349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result.

-27-

See Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995)). A successful plaintiff can recover both treble damages and attorney's fees. See N.Y. Gen. Bus. Law § 349(h).

The element at issue on this appeal is the requisite misleading act. The New York Court of Appeals has adopted an objective definition of "misleading," under which the alleged act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d at 26, 623 N.Y.S.2d at 532-33. The district court concluded that the $225 post-closing fee complained of in this case could not be objectively misleading because it had been disclosed prior to closing. New York law offers some support for this conclusion. See Zuckerman v. BMG Direct Mktg., Inc., 290 A.D.2d 330, 737 N.Y.S.2d 14 (1st Dep't 2002) (holding shipping and handling fees not deceptive where amounts disclosed); Sands v. Ticketmaster-New York, Inc., 207 A.D.2d 687, 616 N.Y.S.2d 362 (1st Dep't 1994) (same re: disclosed ticket service fees); Lewis v. Hertz Corp., 181 A.D.2d 493, 581 N.Y.S.2d 305 (1st Dep't 1992) (same re: disclosed rental car refueling fees).

In none of these cases, however, did the courts have occasion to consider fees prohibited by other substantive laws. As Chase concedes, New York courts have held that collecting fees in violation of other federal or state laws may satisfy the misleading element of § 349. See Negrin v. Norwest Mortgage, Inc., 263 A.D.2d 39, 50, 700 N.Y.S.2d 184, 193 (2d Dep't 1999) ("Allegations of a bank's unilateral imposition of illegal and/or unwarranted

-28-

fees upon its customers state a valid claim [under § 349].”); <u>Bartolomeo v. Runco</u>, 162 Misc. 2d 485, 490, 616 N.Y.S.2d 695, 699 (Yonkers City Ct. 1994) (holding representation that “cellar apartment was a legal apartment . . . was false, misleading and deceptive” under § 349); <u>cf.</u> <u>Lum v. New Century Mortgage Corp.</u>, 19 A.D.3d 558, 559, 800 N.Y.S.2d 408, 410 (2d Dep’t 2005) (holding “no materially misleading statement” under § 349 where yield spread premium disclosed to plaintiff was not “per se illegal”).  Certainly, Chase does not suggest that, in the absence of indications to the contrary, a consumer might not reasonably assume that all fees charged by a respected financial institution such as Chase were legal. We express no opinion as to whether Cohen will, in fact, show that the challenged $225 post-closing fee violates RESPA § 8(b), but while she pursues that claim, we cannot conclude simply from the fact of disclosure that, as a matter of law, the charge cannot constitute a deceptive practice in violation of § 349.

Accordingly, we vacate the dismissal of Cohen’s § 349 claim.  We further note that, upon remand, the district court should allow Cohen to amend her state law claim to include her belated allegation that payment of the challenged post-closing fee was coerced by the threat of forfeiting a $425 non-refundable application and appraisal fee.  Whatever the merits of this coercion claim, it cannot be rejected as a matter of law at this very early stage of the litigation.

### III.  Conclusion

To summarize:

1.      We defer to HUD’s interpretation of RESPA § 8(b) to prohibit unearned fees

whether reflected in divided or undivided charges.

2.      Because the post-closing fee challenged in this case may violate RESPA, its disclosure to the plaintiff before payment does not preclude a claim for deceptive business practices under New York General Business Law § 349.

The judgments of the district court, entered on March 16, 2005, and January 4, 2006, are VACATED, and the case is hereby REMANDED for reinstatement of the complaint and further proceedings consistent with this opinion.