# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2010

No. 09-30902

Lyle W. Cayce
Clerk

TAMMY FORET FREEMAN; LARRY SCOTT FREEMAN,

Plaintiffs - Appellants

v.

QUICKEN LOANS, INC.; TITLE SOURCE, INC.,

Defendants - Appellees

PAUL SMITH; IRMA SMITH,

Plaintiffs - Appellants

v.

QUICKEN LOANS, INC; TITLE SOURCE, INC.,

Defendants - Appellees

JOHN J. BENNETT, III; STACEY B. BENNETT, individually and on behalf of all others similarly situated,

Plaintiffs - Appellants

v.

QUICKEN LOANS, INC; TITLE SOURCE, INC.,

Defendants - Appellees

No. 09-30902

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and HIGGINBOTHAM, and ELROD, Circuit
Judges.

EDITH H. JONES, Chief Judge:

This appeal concerns whether section 8(b) of the Real Estate Settlement
Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), prohibits lenders and others
from charging "unearned, undivided" fees to borrowers at the closing of a
mortgage transaction. The district court granted summary judgment to Quicken
Loans, finding such charges permissible. We affirm, holding that RESPA § 8(b)
requires that the challenged fee be split with another party in order to be
actionable.

## I. BACKGROUND

The Freemans, Bennetts, and Smiths each obtained a mortgage from
Quicken Loans in 2007. At the closing of their mortgage transactions, Quicken
charged the Freemans and Bennetts each a "loan discount fee" and charged the
Smiths a "loan origination fee" as well as a "loan processing fee"—although
Quicken contends the loan origination fee was misstated and was actually a loan
discount fee similar to those charged to the Freemans and Bennetts. The
Freemans and Bennetts contend that a loan discount fee may only be charged
when there is a corresponding interest rate reduction and that otherwise it is an
unearned fee for settlement services in violation of RESPA. As Quicken
allegedly did not decrease the interest rate for either the Freemans' or Bennetts'
loan, the couples argue the fee was unlawful. The Smiths allege that the loan

No. 09-30902

origination fee was duplicative of the loan processing fee, and thus an unearned fee for settlement services, or alternatively, that it was an unlawful loan discount fee akin to the fees charged to the Freemans and Bennetts.

Each couple filed suit separately in state court, seeking class treatment and alleging violations of RESPA and state law. Quicken removed the cases to federal court where they were consolidated. Quicken then moved for summary judgment, claiming that the couples' claims were not actionable under RESPA § 8(b) as the fees were not split with another party, and contending that as a result the state law claims failed. The district court agreed and granted summary judgment.

The couples appeal the district court's interpretation of RESPA. They concede their state law claims are contingent on the RESPA claim, but argue that because they should succeed on their RESPA claim, their state claims also survive.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo* applying the same standard as the district court. *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009). The court examines the evidence in the light most favorable to the nonmoving party, and summary judgment is appropriate if there is no genuine issue as to any material fact. *Id.* The essential facts are not disputed; on appeal the sole question is the interpretation of RESPA, which we review *de novo*.

No. 09-30902

## III. DISCUSSION

The Appellants characterize Quicken's charges in the form of loan discount and loan origination fees as "undivided unearned" fees. RESPA § 8(b) states that:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). Appellants contend that the loan discount fees are charges for a real estate settlement service and that, as there was no interest rate reduction, the charges did not represent "services actually performed." Quicken counters that RESPA does not prohibit undivided unearned fees by a sole provider; to fall under the statute, fees must be divided between two parties such that they resemble a kickback or bribe.[1]

### A.

RESPA § 8(b) has been the subject of several lawsuits to determine its scope. Additionally, in 2001, HUD, the agency responsible for enforcing RESPA, issued a statement of policy that identified four types of overcharge schemes that this provision could potentially cover:

1.   Fee splitting, where two or more persons split a fee, any portion of which is unearned;

---

[1] Alternatively, Quicken cursorily contends that the loan discount fees are not for settlement services, and therefore are not covered by the statute. *See Wooten v. Quicken Loans, Inc.*, No. 07-00478-CG-C, 2008 WL 687379, at \*5 (S.D.Ala. Mar. 10, 2008) (exempting "the substantive terms of a loan" from the scope of "settlement services"). Our disposition of the case on the remaining language of RESPA § 8(b) makes it unnecessary to reach this argument.

4

No. 09-30902

2.  <u>Mark-ups</u>, where a service provider charges the borrower for services performed by a third party in excess of the cost of the services to the service provider but keeps the excess itself;

3.  <u>Undivided unearned fees</u>, where a service provider charges the borrower a fee for which no correlative service is performed; and

4.  <u>Overcharges</u>, where a service provider charges a borrower for services actually performed but in excess of the service's reasonable value.

Statement of Policy 2001-1, 66 Fed. Reg. 53,052 (Oct. 18, 2001). HUD proceeded to assert that RESPA § 8(b) prohibits all four types of transactions. *Id.* All circuits agree that the statute plainly prohibits fee splitting. *See, e.g.*, *Krzalic v. Republic Title Co.*, 314 F.3d 875 (7th Cir. 2002). Similarly, every circuit addressing the issue has rejected the contention that simple overcharges are actionable under the statute. *See Martinez v. Wells Fargo Home Mortgage Inc.*, 598 F.3d 549, 553-54 (9th Cir. 2010) (noting the Second, Third and Eleventh Circuits have all specifically held overcharges are not actionable and joining their conclusion); *Patino v. Lawyers Title Ins. Corp.*, No. 3:6-CV-1479-B, 2007 WL 4687748, at *3 (N.D. Tex. Jan. 11, 2007) (unpublished) (collecting cases).

The circuits disagree on the remaining two types of fees: mark-ups and undivided unearned fees. The Fourth,[2] Seventh,[3] and Eighth[4] Circuits have each held that RESPA § 8 is exclusively an anti-kickback provision. Accordingly, RESPA § 8(b) requires two culpable parties, a giver and a receiver of the

---

[2]  *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261 (4th Cir. 2002).

[3]  *Krzalic*, 314 F.3d at 879.

[4]  *Haug v. Bank of America*, 317 F.3d 832 (8th Cir. 2003).

No. 09-30902

unlawful fee, rendering mark-ups by a sole services provider not actionable. The Second,[5] Third,[6] and Eleventh[7] Circuits have rejected the two-party requirement and held that RESPA § 8(b) prohibits mark-ups. Only the Second Circuit has explicitly addressed whether RESPA § 8(b) prohibits a sole provider's undivided unearned charges and found that it did. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007).[8] Presumably, the three circuits that require two culpable actors would not find undivided unearned charges actionable.

## B.

With these divergent positions in mind, we enter the interpretive fray. "If the intent of Congress is clear, . . . the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. v. Natural Res. Def. Council, Inc.* 467 U.S. 837, 842-43, 104 S. Ct. 2778 (1984).

We hold that the language of RESPA § 8(b) is unambiguous and does not cover undivided unearned fees. First, the language "No person shall give and no person shall accept" is not ambiguous as to whether a sole actor's undivided fees are covered. The term "and" normally means that both of the listed conditions must be satisfied. "The use of the conjunctive 'and' indicates that Congress was clearly aiming at an exchange or transaction, not a unilateral act." *Boulware*,

---

[5] *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49 (2d Cir. 2004).

[6] *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d Cir. 2005).

[7] *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979 (11th Cir. 2003).

[8] The Third Circuit recently passed up an opportunity to evaluate whether a provider could charge fees for work it did not perform. *Tubbs v. N. Am. Title Agency, Inc.*, No. 09-2757, 2010 WL 3044067 (3d Cir. August 5, 2010) (unpublished). The dissent in *Tubbs* argued that remand was unnecessary, despite error by the district court, because the allegations failed to state a claim. *Id.* at *2 (Hardiman, J., dissenting).

No. 09-30902

291 F.3d at 266. Thus, the provision requires two parties each committing an act: one party gives a "portion, split, or percentage," and another party receives a "portion, split, or percentage." *See id.* at 265 ("Therefore, § 8(b) only prohibits overcharges when a 'portion' or 'percentage' of the overcharge is kicked back to or 'split' with a third party."); *Mercado v. Calumet Federal Sav. & Loan Ass'n*, 763 F.2d 269, 270 (7th Cir. 1985) ("The statute requires at least two parties to share fees."). This is not a prohibition on the undivided fees of a sole provider like those charged to the Appellants.

Second, RESPA § 8(b) must be read in conjunction with its companion provision, RESPA § 8(a). RESPA § 8(a) uses language identical to RESPA § 8(b):

> *No person shall give and no person shall accept* any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a) (emphasis added). That "no person shall give and no person shall accept" a kickback clearly requires two culpable actors. "A term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143, 114 S. Ct. 655 (1994); *see also National Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 501, 118 S. Ct. 927 (1998) (identifying "the established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning"). To be consistent with RESPA § 8(a), RESPA § 8(b) should require two culpable actors as well.

Third, RESPA § 8(b)'s language "any portion, split or percentage" requires that two parties share something. *See Boulware*, 291 F.3d at 265 ("By using the language 'portion, split, or percentage,' Congress was clearly aiming at a sharing

7

No. 09-30902

arrangement rather than a unilateral overcharge."). The definitions of all three words require less than 100% or the whole of something. Webster's defines "portion" as "an individual's part or share of something" or "a part of a whole." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1768 (2002). "Split" means "a product of division by or as if by splitting," or "a share (as of booty, winnings, profits)." *Id.* at 2202. "Percentage" means a "part of a whole expressed in hundredths." *Id.* at 1675.

The Appellants note, citing the Second Circuit, that certain statutes use "any portion" and "any percentage" to include situations that involve the entirety of something. *Cohen*, 498 F.3d at 118-19 (citing anti-embezzlement statutes). But this is the exception, not the rule, and there are several reasons not to apply that interpretation here. None of the statutes cited by *Cohen* uses all three terms: portions, split and percentage. Using all three terms collectively emphasizes that Congress intended "part of a whole." "The traditional canon of construction, *noscitur a sociis*, dictates that words grouped in a list should be given related meaning." *Dole v. Steelworkers*, 494 U.S. 26, 36, 110 S. Ct. 929 (1990) (internal quotations and citations omitted). Under the doctrine of *noscitur a sociis*, the court "avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S. Ct. 1061 (1995) (internal citations and quotations omitted). A court stretches the definition of "portion, split or percentage" to its breaking point to mean 100% of a charge. Further, none of the other statutes uses "split." While portion or percentage may be ambiguous in some limited cases, "split" requires dividing a single thing among several parties.

8

No. 09-30902

Finally, when read in its entirety, RESPA is an anti-kickback statute, not an anti-price gouging statute. Congress stated RESPA's purpose in 12 U.S.C. § 2601(b). It explicitly and exclusively prohibits kickback and referral fees:

>   (b)   It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result—
>
>     (1)   in more effective advance disclosure to home buyers and sellers of settlement costs;
>
>     (2)   *in the elimination of kickbacks or referral fees* that tend to increase unnecessarily the costs of certain settlement services;
>
>     (3)   in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and
>
>     (4)   in significant reform and modernization of local record keeping of land title information.

12 U.S.C. § 2601(b) (emphasis added). Section 2601's purpose statement does not discuss, mention, or even hint about a general prohibition on overcharges or unearned fees or other forms of price abuse. If Congress meant to ban other forms of price abuse, such as undivided unearned fees or unearned fees generally, then surely it would not have used such limited language. Unearned fees are not kickbacks, and RESPA does not cover them.[9]

---

[9] There is no reason to recite legislative history given the clarity of the statutory text. Nonetheless, if we must look to the legislative history, the Senate Report that details Congress's intent, S. REP. NO. 93-866 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6545, supports this interpretation. When discussing RESPA § 8, the Senate Report begins by saying that:

> Section [8] is intended to *prohibit all kickback or referral fee arrangements* whereby any payment is made or 'thing of value' furnished for the referral of

No. 09-30902

## C.

The Appellants attempt to rehabilitate their argument by urging us to follow HUD's 2001 policy statement. They assert that this policy statement is entitled to *Chevron* deference and, accordingly, the court must adopt HUD's interpretation that RESPA § 8(b) covers undivided unearned fees. The Second Circuit adopted this rationale in *Cohen*. 498 F.3d at 115 (*citing Kruse*, 383 F.3d at 57).[10]

We are unpersuaded. When the statutory provision is clear on its face, there is no need to look to any regulatory interpretation, such as the HUD 2001 statement. *Chevron*, 467 U.S. at 842-43. If the statute is ambiguous, the court is only required to defer to an agency's interpretation that "reasonably effectuate[s] Congress's intent." *Texas v. United States*, 497 F.3d 491, 506 (5th Cir. 2007). Otherwise, an agency interpretation lacks the "force of law" and will

---

real estate settlement business. The section also prohibits a *person or company that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed.* Reasonable payments in return for services actually performed or goods actually furnished are not intended to be prohibited.

*Id.* at 6551. (emphasis added). Just as in § 2601(b), nothing can be fairly read to cover undivided fees. The description clearly and only covers the classic kickback situation where one party refers a client to another party in exchange for a fee.

Further, all of the examples listed in the Senate Report reference charges divided among multiple parties. *Id.* If Congress meant to prohibit other forms of price gouging, such as unearned fees generally, then the Senate Report would have listed at least one example that does not involve a referral. That Congress did not list such examples strongly implies that RESPA § 8(b) did not cover such other actions.

[10] Other circuits have avoided the issue of whether the HUD statement is entitled to *Chevron* deference. *See Santiago*, 417 F.3d at 389 n.4 ("because we would find HUD's interpretation to be persuasive under *Skidmore*, we would not need to reach whether *Chevron* deference is warranted."); *Krzalic*, 314 F.3d at 879; *Sosa*, 348 F.3d at 984.

No. 09-30902

not receive *Chevron* deference, but instead will be granted *Skidmore* deference and given "respect proportional to its 'power to persuade.'" *United States v. Mead Corp.*, 533 U.S. 218, 235, 121 S. Ct. 2164 (2001). Even assuming *arguendo* that this RESPA provision is ambiguous, the HUD statement is not due *Chevron* deference because there is no indication that the HUD statement carries the force of law. *See Krzalic*, 314 F.3d at 882 (Easterbrook, J., concurring) (stating that regulatory interpretations that do not follow rule-making guidelines under the APA are entitled to *Skidmore* deference only). "Interpretations such as those in opinion letters–like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law–do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655 (2000). Where the agency has not used a deliberative process such as notice-and-comment rulemaking, or where the process by which the agency reached its interpretation is unclear, the court cannot presume Congress intended to grant the interpretation the force of law. For example, the Fifth Circuit has denied *Chevron* deference to IRS revenue rulings,[11] the CMS Medicaid Manual,[12] FTC interpretive rules,[13] and litigation briefs.[14] Unlike other HUD regulations interpreting RESPA, the HUD Statement of Policy was not promulgated through traditional notice-and-comment rulemaking or any similar deliberative process and does not identify any clear methodology by which it

---

[11] *Kornman & Assocs*, 527 F.3d 443 (5th Cir. 2008).

[12] *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581 (5th Cir. 2004).

[13] *Walton v. Rose Mobile Homes*, 298 F.3d 470 (5th Cir. 2002)

[14] *Pool Co. v. Cooper*, 274 F.3d 173, 177 n.3 (5th Cir. 2001).

No. 09-30902

reached its conclusion. Accordingly, the HUD statement is not due *Chevron* deference.

Even under *Skidmore* deference, the HUD statement is unpersuasive. The discussion of RESPA § 8(b) is perfunctory and conclusory. It expresses disagreement with the Seventh Circuit's interpretation of RESPA § 8(b) in *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623 (7th Cir. 2001) but provides no concrete reasoning for its conclusion. 66 Fed. Reg. at 53,053. HUD claims to have a "long-standing interpretation" that RESPA covers undivided unearned fees but offers no clear evidence for this point. *Id*. at 53,058. It asserts that a fee need not be split because of the disjunctive word "or," but offers no discussion, just a conclusory statement. *Id*. It does not address any legislative history or alternate interpretation. Because we are interpreting a statute, HUD must provide some manner of statutory interpretation that would bolster its position. HUD failed to do so.

**D.**

Finally, the Appellants argue that RESPA should ban undivided unearned fees because this type of pricing scheme puts consumers in the same economic position as a kickback. The Third Circuit found this "same economic position" argument persuasive when analyzing whether RESPA § 8(b) prohibited markups. *Santiago*, 417 F.3d at 388-89.

This is not so much an argument as a quarrel with Congress. By its terms, RESPA does not regulate economic outcomes; it only bans certain predatory methods. Congress did not mean to criminalize the charging of fees for settlement services, however they are characterized, as long as they are disclosed and not within RESPA § 8(a) or (b). 12 U.S.C. § 2607(d) (imposing

12

No. 09-30902

criminal penalties and potential imprisonment for any violations of RESPA § 8(b)).[15]

## IV. CONCLUSION

Because the statutory text is clear, RESPA prohibits only kickbacks and referral fees, not unearned fees by a sole provider of settlement services. The charges imposed by Quicken on Appellants for loan discount fees and a loan processing fee are not prohibited by RESPA § 8(b).

The judgment of the district court is **AFFIRMED.**

---

[15] Our disposition of the RESPA claim necessarily requires rejection of Appellants' dependent state law claims.

No. 09-30902

HIGGINBOTHAM, Circuit Judge, dissenting:

I respectfully dissent.  I would, in the main, take the path set forth in the Second Circuit's well-reasoned opinion in *Cohen v. JP Morgan Chase & Company*[1] and hold that unearned undivided loan discount fees violate § 8(b) of the Real Estate Settlement Procedures Act ("RESPA").[2]

The lone aspect of *Cohen* I would not adopt is its decision to give *Chevron* deference[3] to the interpretation of RESPA § 8(b) articulated by the Department of Housing and Urban Development ("HUD") in its Statement of Policy 2001-1.[4] This Court is only required to grant *Chevron* deference to an agency's interpretation of an ambiguous statute if the interpretation has "the force of law,"[5] a description generally reserved for interpretations that are the product of "a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force,"[6] such as traditional notice-and-comment rulemaking.  The HUD Statement of Policy was not promulgated through traditional notice-and-comment rulemaking, and I am not persuaded that the process through which it was promulgated was sufficiently considered to merit *Chevron* deference.  I share the Seventh Circuit's concern over the Statement of Policy's lack of analysis, which expresses disagreement with that court's decision in *Echevarria v. Chicago Title & Trust*

---

[1] 498 F.3d 111, 114-26 (2d Cir. 2007).

[2] 12 U.S.C. § 2607(b).

[3] *See generally Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[4] Statement of Policy 2001-1, 66 Fed. Reg. 53,052 (Oct. 18, 2001).

[5] *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

[6] *Id.* at 229.

*Company*[7] but gives no reason for that disagreement "except that HUD has always regarded such fees as forbidden by the statute, though previously it had failed to make this clear. No evidence or interpretive methodology is mentioned; no abuse pointed to that might justify the contorted interpretation urged by HUD."[8] As Judge Posner explained, "something more formal, more deliberative, than a simple announcement" was needed to invoke *Chevron* deference and "[a] simple announcement is all we have here."[9] While I agree with the Second Circuit that the policy statement is more than a simple announcement,[10] without a more formalized process through which the Agency's views might be challenged and sharpened—such as what occurs in a formal adjudication or notice-and-comment rulemaking—I would not conclude that the Statement of Policy warrants deference under *Chevron*. Per *Skidmore*,[11] I would give HUD's interpretation only such respect as is proportional to its power to persuade.

This concern aside, I would adopt the approach and conclusions of Judge Raggi's fine opinion in *Cohen*. The statutory phrase "any portion, split, or percentage of any charge . . . other than for services actually performed" is ambiguous with respect to Congress's intent to prohibit unearned undivided fees. Prohibiting such fees strikes at a core objective of RESPA: promoting transparency of costs associated with settlement. RESPA is aimed at reducing abuses by those in the mortgage industry through charging borrowers fees for work not actually performed. While the greatest concern may be when that fee

---

[7] 256 F.3d 623 (7th Cir. 2001)

[8] *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002) (citations omitted), *cert. denied*, 539 U.S. 958 (2003).

[9] *See Krzalic*, 314 F.3d at 881 (citing *Barnhart,* 535 U.S. at 212, and *Mead Corp.*, 533 U.S. at 229–31).

[10] *See Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 59-61 (2d Cir. 2004).

[11] *See Mead*, 553 U.S. at 234-35 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

is part of a hidden referral relationship, the damage done to borrowers is similar: they are led to believe they are paying for something they are not. Following *Cohen* would not lead us down the path to a rate-setting regime. The task of the court is very different when determining whether any service was provided as opposed to whether the price charged is a reasonable one. When the fee is entirely unearned, the court is not forced to determine the reasonableness of a fee—a task for which courts are not well suited—because the reasonable fee for nothing is nothing.

Accordingly, I respectfully dissent.