# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 14, 2011

Lyle W. Cayce
Clerk

No. 10-20490

DANIEL CARRERA; JOEL DIXON; ERNIE M. HERNANDEZ; MICHAEL R. HERNANDEZ; RAFAEL TELLO,

Plaintiffs – Appellants

v.

COMMERCIAL COATING SERVICES INTERNATIONAL, LIMITED; CCSI MANAGEMENT, L.L.C.,

Defendants – Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-3021

Before REAVLEY, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellants are five former employees of Commercial Coating Services International ("CCSI") who claim that CCSI supervisors created a hostile work environment by subjecting Appellants to harassment on the basis of their race, and that they were fired in retaliation for complaining about this harassment. The district court granted summary judgment to CCSI on both the hostile work

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20490

environment and retaliation claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981.  Appellants argue on appeal that there are genuine issues of material fact as to both sets of claims. We conclude that there are no genuine issues of material fact except with respect to Appellant Ernie Hernandez's claims of discrimination and retaliation.  We therefore REVERSE the judgment of the district court with respect to these claims, and AFFIRM as to all claims raised by the remaining Appellants.

I.

CCSI is a Conroe, Texas-based company that provides corrosive coatings for pipelines and valves.  The company assigns "field technicians"—whose job is to coat and fit pipe as it is laid into the ground—to projects on an as-needed basis.  Field technician positions are per contract jobs, although those who are not working on field projects often work in CCSI's shop at headquarters until the next project opens.

The Appellants in this case are five individuals who, between 2007 and 2008, worked on a contract basis as field technicians for CCSI: Daniel Carrera ("Carrera"), Joel Dixon ("Dixon"), Ernie Hernandez ("Ernie"), Michael Hernandez ("Michael"), and Rafael Tello ("Tello").  All Appellants claim (1) that they were subjected to a hostile work environment at the hands of their field project supervisors on account of their race, (2) that they complained about racial harassment to managers at CCSI, (3) that CCSI did nothing to put an end to the harassment, and (4) that after Appellants complained, CCSI retaliated against them by denying them field work or firing them.

 CCSI responds that Appellants' allegations are vague, generalized, and conclusory.  CCSI asserts (1) that Appellants were not discriminated against, (2) that contrary to Appellants' allegations, they never complained to CCSI managers, (3) that the Appellants generally had job-performance problems justifying any reduction in field technician assignments, and (4) that only one

No. 10-20490

of the five Appellants—Ernie Hernandez—was actually terminated from his employment, which was due to unauthorized behavior.

Carrera, Ernie, Michael, and Tello—all of whom are Hispanic—claim that they were harassed by their supervisors Johnny Hicks ("Hicks"), who is black, and Sean Dougherty ("Dougherty"), who is white.  Dixon, who is white, claims that he was harassed by Hicks.

The district court rejected Appellants' claims of discrimination and retaliation.  As to the former, the court reasoned that Appellants offered only vague recollections and did not provide evidence of harassment to the court.  With respect to the retaliation claims, the court noted that all Appellants had been reprimanded for poor performance—a legitimate, nonretaliatory reason for the company to limit their field assignments—and that they failed to produce evidence "from which to infer that their complaints caused the cessation of work." Appellants timely appealed to this Court, invoking our jurisdiction under 28 U.S.C. § 1291.

## II.

The central question on appeal is whether a genuine issue of material fact exists with respect to the racial discrimination and retaliation claims asserted by Appellants.  We review the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 801 (5th Cir. 2010).  "When reviewing a summary judgment, although we construe all facts and draw all justifiable inferences in the light most favorable to the nonmoving party, the nonmoving party must set forth specific facts to establish that there is a genuine issue for trial." *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 180 (5th Cir. 2009).

> An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. . . .  A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. . . .  Finally, a

> summary assertion made in an affidavit is simply not enough proof
> to raise a genuine issue of material fact.

*Id.* at 181 (internal quotation marks and citations omitted).

## A.

"A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, Appellants must establish a prima facie case that (1) they belong to a protected group; (2) they were subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) CCSI knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey*, 286 F.3d at 268.

To affect a term or condition of employment, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This determination requires that we apply a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (internal quotation marks and citations omitted).

## 1.

We agree with the district court that the allegations of racial harassment made by Carrera, Dixon, Tello, and Michael Hernandez are properly dismissed on summary judgment because they are vague and unsubstantiated.

No. 10-20490

Furthermore, there are numerous inconsistencies within and between their complaints, their deposition testimony, their declarations, their EEOC complaints, and their brief.   "This Court has cautioned that 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey*, 286 F.3d at 269 (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc)).  In *Ramsey*, we found a plaintiff's allegations of racial harassment insufficient to overcome summary judgment where the plaintiff had "allege[d] that she 'suffered ongoing racial harassment from black females,' but point[ed] to no concrete examples." *Id.*  Most of Appellants' claims are similarly generalized and even opaque, such as Dixon's assertion that all non-black employees were "harassed and degraded and humiliated on a constant basis" and Michael Hernandez's claim that Hicks was "consistently harassing and badgering with racial slurs and vulgarity."  These vague assertions are inadequate to satisfy Appellants' burden in a motion for summary judgment.

To be sure, the four men do allege a few concrete instances of harassment. We have held, however, that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted). Dixon and Tello each worked on only one field project for CCSI and each allege no more than two specific incidents of harassment.  Carrera and Michael Hernandez, who worked at CCSI for approximately three to five months each, similarly fail to allege sufficiently severe or pervasive harassment over their brief employment.  The incidents of harassment that they identify—such as Michael's allegation that Dougherty once tried to run him over with his car while working on a field job—are unsubstantiated beyond their own bare assertions.

5

No. 10-20490

Furthermore, Appellants have presented no evidence to support their conclusory allegation that similarly situated black employees were treated with greater respect or given more favorable work than Hispanic or white employees. Viewing the record in the light most favorable to these Appellants, they have failed to meet their burden of showing that a genuine issue of material fact exists with respect to legally cognizable discrimination by CCSI.

2.

We next turn to Ernie Hernandez's discrimination claims. In contrast to his co-plaintiffs, Ernie alleges a number of specific incidents of racially discriminatory harassment involving slurs and physically threatening conduct. We conclude that the district court improperly granted summary judgment to CCSI on Ernie's discrimination claim.

Ernie Hernandez was employed by CCSI in a full-time capacity by virtue of a retention program for field technicians. He worked as a field technician beginning in April 2007 and was terminated in June 2008. He testified about various incidents of racial hostility, including one instance when he was on his cell phone while in his car at a job site and Hicks pounded on his car, "threatening [him] physically with his fists" and calling him a "f***ing Mexican" as he yelled at him to get out of the car. Ernie alleges that in another incident a diesel shop manager named Charlie Simpson ("Simpson") slammed a hammer down on a metal table directly behind Ernie, causing damage to his ears and an injury to his back. Ernie testified that he felt he was attacked because of his race, although CCSI's internal investigation concluded that this was an incident of horseplay, and the company issued a warning to Simpson for violation of company policy.

Ernie claims that "Hicks constantly called me either stupid Mexican or f***ing wetback, either in the shop . . . or out in the field as a field technician," and that Hicks called him a "f***ing Mexican" when he arrived late for work.

No. 10-20490

He testified further that he was "harassed and threatened under racial discrimination" by a forklift driver at CCSI's headquarters location. Ernie states that he reported the forklift incident to several supervisors, and that one of them told him they had all conferred with the forklift operator and mutually agreed they "were going to deny it." He also claims to have reported Hicks's harassment to at least three supervisors, to no avail. Ernie filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in January 2008, and at that point CCSI assigned him to work in the shop full-time while it investigated his grievance.

According to CCSI, its internal investigation revealed nothing to corroborate Ernie Hernandez's discrimination claim. Certain incidents Ernie has described, however, are uncontroverted. For example, although CCSI disputes that Simpson's conduct in the hammer incident was racially motivated, there is no question that the incident took place. Furthermore, Ernie's allegations of racial harassment are substantially more specific than those of the other Appellants, and the conduct he cites is more severe and pervasive in nature.[1] In the light of these considerations, we conclude that the allegations set forth by Ernie Hernandez are sufficient to establish triable issues of fact on the question of racial harassment.

B.

We next address Appellants' claim that CCSI retaliated against them in violation of Title VII and § 1981. "To present a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment

---

[1] We note in this regard Ernie's recollection of specific events that, if true, evidence a pervasive atmosphere of racial discrimination created by Hicks. For example, according to Ernie, one day when an elderly man had passed out while on the job, Hicks turned his back to the man, saying "F*** that white boy."

7

action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Complaining to supervisors about racial harassment is a protected activity.[2] *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000) ("Under Title VII, an employee has engaged in protected activity if he or she has (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'") (quoting 42 U.S.C. § 2000e-3(a)).

1.

Carrera, Dixon, Tello, and Michael Hernandez contend that they were subjects of adverse employment actions in the sense that they stopped receiving field work. The record indicates, however, that all four were per contract employees and that the availability of field assignments was generally inconsistent. Assuming arguendo that they were subjects of adverse employment actions, these Appellants have failed to establish the requisite causal link between their protected activity and any reduction in field assignments.

"If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Appellants submit that they have made a prima facie showing of a causal link through the temporal proximity between their complaints and the alleged denial of field work. CCSI does not dispute that temporal proximity can

---

[2] Although some of Appellants' assertions as to their complaints to CCSI managers are vague and unsubstantiated, we can assume that CCSI was put on notice about these grievances, either through Appellants' alleged complaints to their supervisors or through the filing of their EEOC complaints in January and March of 2008.

No. 10-20490

be a basis for demonstrating the requisite causal link. We thus turn to whether CCSI has articulated a legitimate reason for denying Appellants work.

"The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557 (internal citations omitted). CCSI has elicited declarations and deposition testimony to show that Appellants performed poorly on the job or were otherwise unable to comply with CCSI's job requirements, and that this justifies any adverse employment action they may have experienced. Indeed, all four Appellants acknowledge that they had been reprimanded for poor performance.

The burden thus shifts to Appellants to show pretext. "To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Appellants have failed to produce any evidence other than their own conclusory assertions as to the pretextual nature of CCSI's proffered nonretaliatory justification. We therefore conclude that the district court properly granted summary judgment to CCSI on these claims.

2.

Turning to Ernie Hernandez's retaliation claim, we conclude that there are genuine issues of fact warranting reversal of summary judgment. Ernie's claim differs materially from those of the other Appellants. Ernie was a full-time employee of CCSI, and the company acknowledges terminating his employment in June 2008. Although CCSI generally asserts that all of the Appellants had "performance issues," it argues with respect to Ernie specifically that he was terminated because video surveillance caught him breaking into a locked office

9

No. 10-20490

at CCSI headquarters without authorization on June 4, 2008. Ernie does not dispute entering the office, but he asserts that it was a designated room that field technicians were allowed to use at any time, and that two supervisors had personally shown him how to use a screwdriver to "jimmy" the door whenever he wished to access it. Dixon corroborated this account, testifying that he too would jimmy the door to access the room using a credit card, and that he was told by supervisor Paul Shaw ("Shaw")—from whom there is no record testimony—that jimmying the door was acceptable. According to Dixon, Shaw told him that field technicians were allowed to enter the room in whatever way they could because keys to the office were not available.

Ernie was observed forcibly entering the locked office on the very same day that he met with CCSI management to discuss his complaint regarding the hammer incident, in which he claims to have been victimized by Simpson on account of his race. A letter reflecting CCSI's internal resolution of the hammer incident indicates that the break-in discovery came about as a result of CCSI's investigation that day into Ernie's grievance. CCSI's position that the break-in was grounds for termination is weakened, however, by its concession that Ernie was authorized to enter the office and needed only to ask for a key if he wished to gain access, not to mention the disputed fact whether forcible entry was routinely allowed. Under these circumstances, we conclude that there are genuine issues of material fact with respect to Ernie's claim that his termination was retaliatory.

### III.

To summarize, with the exception of Ernie Hernandez, Appellants have failed to substantiate their generalized and conclusory assertions of racial harassment by CCSI employees, nor have they shown the discrimination they allege to be sufficiently severe or pervasive to state a cognizable claim under Title VII. They have similarly failed to support their claims that CCSI retaliated

10

against them for complaining about the harassment. Assuming they were subject to adverse employment actions, Appellants have failed to rebut the nonretaliatory justifications proffered by CCSI for any reduction in field assignments that they experienced. Ernie Hernandez, by contrast, has substantiated his specific allegations of discrimination and retaliation, establishing the existence of genuine issues for trial.

We have thus concluded that the district court properly awarded summary judgment to CCSI on the discrimination and retaliation claims raised by Carrera, Dixon, Tello, and Michael Hernandez, and that summary judgment for CCSI on the claims raised by Ernie Hernandez was improper. We therefore REVERSE the judgment of the district court as to Ernie Hernandez and AFFIRM the judgment in all other respects. The case is remanded for further proceedings not inconsistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.