[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11636

_____

D.C. Docket No. 1:13-cv-01468-RWS

PATRICIA L. CLEMENTS,
Individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

versus

LSI TITLE AGENCY, INC.,
a division of Lender Processing Services, Inc.,
LAW OFFICES OF WILLIAM E. FAIR III, LLC,
WILLIAM EVE FAIR III, ET AL.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 2, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and HAIKALA,[*]
District Judge.

---

[*] Honorable Madeline Hughes Haikala, United States District Judge for the Northern District of
Alabama, sitting by designation.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide three questions: (1) whether an allegation that a lender charged a borrower for unearned fees confers standing on the borrower; (2) whether a mortgage service provider performs only nominal services, 12 U.S.C. § 2607(b), when it procures a closing attorney; and (3) whether a mortgage service provider "give[s or] . . . accept[s] any portion, split, or percentage of any [settlement] charge" when it marks up the price of a third-party service, *id.* After Patricia L. Clements refinanced a mortgage, she sued LSI Title Agency, Inc., the mortgage service provider that facilitated the refinancing; the Law Offices of William E. Fair III, LLC, which LSI hired to witness the mortgage closing; and William Eve Fair III, an attorney. Clements alleged two violations of the Real Estate Settlement Procedures Act, *id.* §§ 2601–2617, and three violations of Georgia law. The district court dismissed the amended complaint for lack of standing. Fed. R. Civ. P. 12(b)(1). Although we conclude that Clements has standing to sue, we affirm in part the dismissal of her federal claims for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), and we vacate in part and remand for the district court to decide whether to exercise supplemental jurisdiction over her claims under Georgia law.

2

## I. BACKGROUND

Clements refinanced a mortgage with Wells Fargo Bank, N.A., which hired LSI to provide mortgage refinancing services for the transaction. Because Georgia law requires all closing services to be performed by a licensed attorney, *In re UPL Advisory Op. 2003-2*, 588 S.E.2d 741, 741–42 (Ga. 2003), LSI contracted with the Law Offices to provide a closing attorney, and the Law Offices arranged for Sean Rogers to serve in that capacity.

After the refinancing, Clements filed a putative class action in a state court against LSI, the Law Offices, Fair, and other unnamed defendants. The defendants removed the complaint to the district court, and Clements filed an amended complaint. Clements alleged that LSI routinely had non-attorneys prepare all of the documents for the closing and that the Law Offices and Fair arranged for a licensed attorney, Rogers, to witness the signing of the documents, in violation of Georgia law, *id.*

Clements alleged two violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617, which makes it illegal for any person to accept any portion of a settlement charge unless that person rendered a service for the charge. *Id.* § 2607(b). First, Clements alleged that she paid a $300 settlement fee for services that LSI provided in violation of Georgia law, *In re UPL Advisory Op. 2003-2*, 588 S.E.2d at 741–42. Clements alleged that the defendants and Rogers

split the settlement fee in violation of the Act because the defendants "provided no actual services related to the closing of the loan." *See* 12 U.S.C. § 2607(b). Second, Clements alleged that LSI violated the Act because LSI charged Clements $125 for "[g]overnment recording charges" even though LSI paid only $40. *See Id.* Clements alleged that LSI provided no services for the $85 markup.

Clements also alleged violations of Georgia law. Clements alleged that LSI, the Law Offices, and Fair violated sections 16-14-4 and 44-14-13 of the Georgia Code. And Clements alleged that LSI, the Law Offices, and Fair were unjustly enriched by the mortgage closing.

LSI, the Law Offices, and Fair moved to dismiss the amended complaint on two grounds. First, they argued that, because Clements received a credit for the exact amount of the mortgage closing costs, which included the $300 settlement fee and the $125 recording charges, she failed to allege an injury and lacked standing. Fed. R. Civ. P. 12(b)(1). Second, they argued, in the alternative, that Clements failed to state claims upon which relief could be granted. Fed. R. Civ. P. 12(b)(6).

The district court ruled that Clements lacked standing and dismissed the amended complaint. Clements's schedule of settlement charges, which was attached to the amended complaint, stated that Clements paid the settlement fee and recording charges "[f]rom [b]orrower's [f]unds at [s]ettlement," and that the

credit Clements received was "for the specific interest rate chosen," but the district court ruled that, because Clements received a credit for the exact amount of the closing costs, Clements did not allege an injury.

## II.  STANDARD OF REVIEW

A dismissal "for lack of subject matter jurisdiction presents a legal question that we review *de novo*." *Miccosukee Tribe of Indians v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1296 (11th Cir. 2010). We "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). "[W]e may affirm the dismissal of a complaint on any ground supported by the record[,] even if that ground was not considered by the district court." *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014). "If [the] . . . complaint fails to state a claim . . . , then the dismissal of the . . . complaint must be affirmed." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

## III.  DISCUSSION

The parties present two issues. First, the parties dispute whether Clements has standing to sue in a federal court. Second, LSI, the Law Offices, and Fair argue that, if Clements has standing, we should affirm the dismissal of the amended complaint because Clements failed to state claims upon which relief could be granted. We address each issue in turn.

5

*A. Clements Has Standing Because She Alleged an Injury.*

As a threshold matter, Clements must have standing to pursue her complaint in a federal court. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011). "The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under Article III [of the Constitution] consists of three elements: an actual or imminent injury, causation, and redressability." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992)). Although the parties do not dispute causation or redressability, they do not agree that Clements has alleged an injury.

Clements alleged an actual injury. Clements alleged in the amended complaint that, had she "not been charged [the settlement fee and government recording charges], . . . [she would have] receiv[ed] an additional $300 . . . [and] an additional $85." And Clements's schedule of settlement charges, which was attached to the amended complaint, stated that the $300 and $85 were paid "[f]rom [b]orrower's [f]unds at [s]ettlement" and that the credit was "for the specific interest rate chosen." Clements's allegation that she would have received a $385 refund is an actual injury. That Clements received a credit for an amount equal to the exact total of the closing costs undermines the credibility of Clements's allegation, but it does not necessarily refute her allegation that she would have otherwise received that amount in addition to the credit for the interest rate chosen.

Clements did not need to prove her allegations at the pleading stage, and her "general factual allegations of injury resulting from the defendant[s'] conduct . . . suffice to establish standing," *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (internal quotation marks and citation omitted). The district court erred when it dismissed Clements's complaint for lack of standing, so we must consider whether the record supports an alternative ground for dismissal.

### B. Clements Failed to State a Claim under the Act.

The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617, provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed." *Id.* § 2607(b). To plead a violation of the Act, a plaintiff must "allege that no services were rendered in exchange for a settlement fee." *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1298 (11th Cir. 2008). This Court has stated that "no services," *id.*, means "no, nominal, or duplicative" services. *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1263 n.8 (11th Cir. 2002) (internal quotation marks omitted).

Clements contends that the defendants violated the Act in two ways. First, Clements argues that LSI, the Law Offices, and Fair violated the Act when they split the $300 settlement fee, because they provided only "nominal" services. She

maintains that the services were nominal because LSI provided services that only licensed attorneys can provide, *In re UPL Advisory Op. 2003-2*, 588 S.E.2d 741, and the Law Offices and Fair provided only the service of "finding [Rogers] to provide the service [that the Law Offices and Fair were supposed to provide]." Second, Clements argues that LSI individually violated the Act when it marked up the price of the government recording charges from $40 to $125, because the markup was a "split" between "the government and LSI" and LSI provided no service for the additional $85. But neither argument describes a violation of the Act.

Clements's allegation that LSI, the Law Offices, and Fair split the settlement fee fails to allege a violation of the Act. A "nominal" service "[e]xist[s] in name only." *Black's Law Dictionary* 1148 (9th ed. 2009) ("nominal"). That Georgia law made it illegal for LSI to provide settlement services does not mean that the services "[e]xist[ed] in name only," *id.* Although the settlement fee "was arguably 'unearned' as a matter of [Georgia] law, as a factual matter it was not in exchange for nothing." *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1226 (11th Cir. 2008). And the Law Offices and Fair earned their portion of the settlement fee because "arranging for [a] third party contractor[] to perform [a service]" is itself a service. *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 983–84 (11th Cir.

8

2003). LSI, the Law Offices, and Fair "actually performed" "services" for their "portion[s], split[s], or percentage[s]" of the settlement fee. 12 U.S.C. § 2607(b).

Clements's allegation that LSI marked up the price of the government recording charges also fails to allege a violation of the Act. Clements argues that a markup of a charge to the consumer violates the Act when the mortgage service provider accepts an unearned portion of that charge, but the Supreme Court explained in *Freeman v. Quicken Loans, Inc.*, that "[section] 2607(b) clearly describes two distinct exchanges." __ U.S. __, __, 132 S. Ct. 2034, 2040 (2012). The Act requires that, "[f]irst, a 'charge' is 'made' to or 'received' from a consumer by a settlement-service provider. That provider then 'give[s],' and another person 'accept[s],' a 'portion, split, or percentage' of the charge." *Id.* (second and third alteration in original) (quoting 12 U.S.C. § 2607(b)). The Supreme Court read the terms "give" and "accept" as referring to the second exchange between the service provider and the third party, not the first exchange between the consumer and the service provider. *Id.* at 2041. When a service provider marks up a fee, the service provider "give[s]" a "portion, split, or percentage" to a third party, and the third party "accept[s]" that "portion, split, or percentage." 12 U.S.C. § 2607(b). But the second exchange does not violate the Act when the third party has "actually performed" a "service." *Id.* And the third party "give[s]" nothing back to the service provider, so the service provider does

9

not "accept" something for which it did not perform a service. *Id.* Although we have stated in dicta that a markup violates the Act, *Sosa*, 348 F.3d at 981–83, our dicta cannot be squared with the later reading of the text by the Supreme Court in *Freeman*, 132 S. Ct. 2034. LSI has neither "give[n] . . . [nor] accept[ed] any portion, split, or percentage of any charge . . . other than for services actually performed." 12 U.S.C. § 2607(b).

Our reading of the Act comports with the majority of the circuit courts that have addressed this issue and held that "Congress chose to leave markups . . . to the free market." *Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 268 (4th Cir. 2002); *see also Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 804 (5th Cir. 2010), *aff'd* 132 S. Ct. 2034; *Haug v. Bank of Am., N.A.*, 317 F.3d 832, 836 (8th Cir. 2003); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 880 (7th Cir. 2002). These sister circuits have held that the text of the Act is unambiguous, *Krzalic*, 314 F.3d at 879, and that, if Congress wanted to prohibit markups, it "could easily have written [section 2607(b)] to state that 'there shall be no markups or overcharges for real estate settlement services[,]' [o]r . . . that 'a mortgage lender shall only charge the consumer what is paid to a third party for a real estate settlement service,'" *Boulware*, 291 F.3d at 267. These decisions also are consistent with the analysis in *Freeman*. Two of our sister circuits have held that markups are a violation of the Act, *Santiago v. GMAC Mortg. Grp., Inc.*, 417 F.3d 384, 389 (3d Cir. 2005); *Kruse*

10

*v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 59 (2d Cir. 2004), but those decisions are unpersuasive and inconsistent with the later decision of the Supreme Court in *Freeman*.

Because we conclude that Clements failed to state a claim for relief under federal law, we do not address her claims for relief under state law. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). We remand to the district court to decide whether to exercise supplemental jurisdiction over these claims or remand them to state court. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1123 (11th Cir. 2005).

## IV.  CONCLUSION

We **AFFIRM** the dismissal of Clements's federal claims, **VACATE** the dismissal of her state claims, and **REMAND** for the district court to decide whether to exercise supplemental jurisdiction over her state claims.